May it please the Court, Maria Radwick for Appellant Alan Fox. This case is a classic example where the summary judgment standard is misapplied and the inferences are drawn against the nonmoving party, Mr. Fox. When the evidence is construed in his favor, as it should be, the evidence compels the conclusion that summary judgment was improper in this case. Why? And I'll start with the excessive force claim. We have the excessive force claim requires balancing of the amount of force with the government agency. What happened here that in your view was excessive force, in the light most favorable to your client? There's sworn evidence from Mr. Fox that shows that he was in an underground garage where he was assaulted by two individuals. He was running away and he was holding a screwdriver that he picked up in self-defense. And at that point, when he was running away from them, he saw the police. The police had arrived at the scene. The officers drew their guns and ordered him to get on the ground and then --. Is there anything wrong with that? Withdrawing their guns? And ordering him to get on the ground under these circumstances. No. All right. So he got on the ground. Then he got on the ground. He got on the ground and he dropped the screwdriver, as he was ordered. And at that time, he was now lying prone on the ground and no longer resisting the arrest. There's no argument on the other side that he was resisting. There's no evidence for that. He was compliant and outnumbered and unarmed. And at that time, what happened --. What did they do to him? They jumped on his back. The officers jumped on his back with their knees and twisted. In the process of handcuffing him? In the process of handcuffing him and twisted his arm again in the same process. Behind his back? His left arm behind his back. That's correct. That's what the evidence suggests. And broke the arm. The fact that he had dropped his screwdriver, don't you believe that the officers reasonably could have believed that he had something else, another weapon not visible? That is certainly a plausible inference, Your Honor. However, it creates a disputed fact. It creates a disputed issue. It does not provide sufficient basis to find that as a matter of law. Except is it really a disputed fact? It's not saying that he did have, that he did have a weapon, but that the officers, given the fact that your client was a suspect in a car burglary, he had had a weapon, that they reasonably believed that he might have another. There is, Your Honor, there is no evidence that he had another weapon. There is no evidence to justify any conclusion that he was armed other than he was fleeing from other individuals and he got on the ground, he dropped the tool, and at that point there was no, you know, and this is, of course, a disputed issue, but the jury, a jury could conclude that there was no need to break his arm. Well, did they punch him? They didn't punch him. Did they hit him with a baton? No. Did they shoot him? There was certainly no need for that, based on the evidence. They didn't. But as far as I can tell, have you ever seen, watched an arrest go down? No, I have not, Your Honor. I mean, to me, this is a standard arrest that happens a thousand times a day in Los Angeles. This is the way arrests happen. They put somebody down, they immobilize that person, bring the arms behind that person's back and put handcuffs on. And what I can't see is that anything different than that happened here, other than a bad result, so long as you don't believe your client's written statement about what happened. I mean, all this was was an arrest, and I don't see how there was excessive force. There may have been an injury that resulted, but how was it excessive force just handcuffing him? It was excessive force, Your Honor, because it resulted in a broken arm. Well, we don't know that. For somebody who was not resisting, and this Court has held in many cases that handcuffing that is too tight or that results in abrasions and, you know, an injured wrist could be excessive force. It says Robert Farrow beat me with iron pipes in which broke my left arm and right leg. I mean, he says that other people beat him and broke his arm. Your Honor, and that's a serious credibility problem for the jury. With him, for him? For him, of course. And we concede that. We just – that is not – that is something to be considered. Can we take this into consideration in our decision, the letter that he wrote to Internal Affairs, where he says other people broke his arm? Your Honor, it's in the record. However, we disagree with appellees that the sham affidavit rule applies because this is not a sworn statement. Well, even if it's not the sham affidavit, the fact is there. It says other people did it to him. However, the fact that we might have a serious disbelief about this version of events, it simply does not provide a basis for granting summary judgment. And this Court has held that. Do you have any case that says handcuffing, the standard handcuffing procedure that's taught at all police academies almost everywhere, can result in an excessive force claim if a person's shoulder or arm or wrist or something like that is broken? Is there any case that says that's excessive force? Well, there's cases, Your Honor, and this is the Meredith case that was cited in the brief and the Palmer case and the Black case, that line of cases that hold that you can have a standard handcuffing procedure and an injury that results from tight handcuffing and that could be excessive force. There was just no need for that to happen. If there was no, if you had an arrestee that was not resisting, that did not present danger at that moment. It is so fact specific. We have also cited the Santos and Lalonde cases in the brief. And those cases are analogous in that injury resulted in the Santos case was a broken vertebra. In the Lalonde case, it was an injured back, so very similar. It was from a standard procedure of taking a suspect down and handcuffing him. An injury resulted, and what the court decided was summary judgment is not appropriate because you, there was no evidence that either of those suspects was resisting the arrest. But your client, from the officer's point of view, they'd received a call that citizens had arrested a suspect in a car burglary. They come upon the scene, he is fleeing and he's armed. In a split-second decision, the officer has to do what the officer believes is necessary, don't you think? That is certainly true. However, there are limits to that, and that's where this Court's excessive force cases come in, and it's where you have, it's the amount of force that you balance against the danger. And was the amount of force necessary or sufficient to break an arm necessary in that case? Wasn't he charged with assault? I believe he was, Your Honor. And certainly that must be taken into consideration in terms of the effort necessary to subdue him? There was nothing, there's nothing in the evidence that suggests that the, that he was in a state of mind of, of the officers at that time. We're told that there was an incident which preceded that, in which apparently he was trying to burglarize some cars and got into an altercation with some citizens. Doesn't all of that go into the record or not? That, that is in the record. It's just that it doesn't change the fact that the amount of force sufficient to break his arm was not necessary after he was lying prone on the ground and no longer resisting. But you're assuming that the officers broke his arm when he says in his own filing that his arm was broken by these other people. No, we're not assuming that. We can see that that's a serious credibility issue and serious issue of disputed fact. What about the medical issue? There are similarly disputed issues on the deliberate indifference claims. What we know, again, from his sworn statements is that he informed each of the defendants that he, he had pain and that some of them specifically, he says that he informed that he, he thought his arm and, and leg could be broken. And they ignored those complaints. Starting with the officers at the scene, the evidence is there was a paramedic there. So it wouldn't have been very hard for them to allow the paramedic to examine him, Mr. Fox, but that, that was just completely ignored, which is, which is quintessential deliberate indifference is where you, and of course, when we go to Dr. Frazier, he tells her, you know, my, I think my arm and my leg are broken and I suffer from pain and, you know, please take x-rays. And she, she simply decides that she doesn't believe that. And I should, I should note, Your Honors, that the record in this case, on this record, on this very limited record, these issues are disputed. We don't know what it would have been if we had a deposition taken of, of plaintiff, but that was not what was done. And there were, there are also no declarations from the officers about what happened. Thank you. Roberts. Thank you, counsel. Your time has expired. Thank you. We'll hear from the Governor. May it please the Court. Kel Johanson, Deputy City Attorney, on behalf of defendants and appellees here this morning. I'd like to start by saying that this really is a situation in which Mr. Fox changed a story, a very fundamental change, between a description in which he says Ferro and Tello were the source of his injuries and broken arm, and that the officer's description of use of force does not include any allegations of him jumping on his back, twisting his arm or breaking his arm, to one that's 180 degrees different. So there is a clear and unambiguous contradiction. What I'd like to point out, when Mr. Fox was confronted with his statement, written, handwritten statement, to LAPD Internal Affairs. Confronted during a deposition? No. Confronted. You say confronted. When he was confronted at the summary judgment stage, when it was presented to him as evidence, his response to that, as well as his writ of habeas corpus, which was verified and which was under penalty of perjury. Mr. Fox had the opportunity, as noted in the Cleveland case, as well as the sham affidavit cases, of confronting that and trying to come up with an explanation. He didn't provide any explanation at all. He simply ignored it. So I think the Court should take that into consideration, that he did have the opportunity to explain, qualify, claim that there was a mistake, disavow his statement to LAPD Internal Affairs, but instead he remained silent on that point. I think that's critical for the Court to consider. In addition, I'd like to direct the Court to the reply brief by appellants. Page 8, where counsel notes that Mr. Fox might have been mistaken as to how his arm was broken, and indeed quotes the magistrate's report that was submitted as part of the summary judgment, where the magistrate says that Mr. Fox may have been ---- was not competent to make a determination as to whether his arm was injured as a result of the in the underground garage when they confronted him and hit him with pipes, or a combination of both. And I would submit to the Court, if Mr. Fox is not competent to be able to say exactly how his arm was broken, what that suggests to this Court is that there's no competent evidence as to how his arm was broken. Now, there's no dispute that it was, but if Mr. Fox isn't competent to be able to say how it was broken, then there's no evidence in this record saying how it was broken. And what that really leaves is either the Court with the determination that he's really committed to an earlier narrative where the officers didn't use force against him, or even with the description where they jumped on him, twisted his arm. What's missing from that is any evidence to show that the officers broke his arm as a result of that action. And that's Mr. Fox's burden to prove. It's not the defendant's burden. Roberts. What kind of a break was it? The medical record. A compound fracture, a stress fracture? What kind of break was it? I appreciate the question. The description at the preliminary hearing that is not contradicted in this record is that when Tello and Fiero were assaulting him in the underground garage, Mr. Fox lifted his left arm in a defensive action and was hit mid-forearm. The medical record that Mr. Fox submits describes a mid-ulna or mid-forearm fracture to his arm. That's consistent with being hit with a blunt object like a metal pipe. What's being described as the source of his break by Mr. Fox is the twisting of his arm. There's no expert testimony. There's no medical testimony. There's no doctor testimony that states that the twisting of an arm as for being handcuffed would result in the type of fracture that the medical records indicate. So there's nothing in the record to state that the twisting of the arm in the process of handcuffing could result in the type of break that the medical records reflect. Unless there's any additional questions on the use of force, what I wanted to do is I wanted to turn to the Dr. Frazier's treatment of Mr. Fox. I think some of the most important evidence is Dr. Frazier's declaration, as well as the materials that she attaches. She specifically talks about what she observed. Now, granted, Mr. Fox says Dr. Frazier didn't do anything except take his temperature. But what he does do is he does admit that he was seen by Dr. Frazier. And what did Dr. Frazier say she saw? She said that his left arm, it was not red, it was not swollen, and there was no visible abrasion. And it wasn't warm. And that the range of motion was normal. Yes. And he said, ow, but he didn't pull his arm away. Now, when faced with that, was there enough that Dr. Frazier saw to lead her to conclude that he was at risk of serious harm? Does Mr. Fox give any contradictory statements about what he said to Dr. Frazier, whether does he say I couldn't lift my arm, I said ow, anything like that? No, he doesn't. He simply says she didn't do anything except take my temperature, which is at most a broad general denial. He doesn't deny that he was seen by her. He doesn't deny that she saw his arm. Dr. Frazier addresses the issue of pain medication. She notes in her written notes pain medication per RSG protocol. I'm not quite sure what that means, but she explains it. She says in her declaration that she told the nurse to give Mr. Fox pain medication if he requested it. Now, why did she do that? She said she offered it to him, but he refused. In addition, she said that he was argumentative and difficult to deal with. So even when it comes to the issue of pain, Dr. Frazier did attempt to address that. The standard is very high when it comes to deliberate indifference. Dr. Frazier must be subjectively aware and disregard a substantial risk of harm to Mr. Fox's health. I would direct the Court to a questionnaire that was filled out by one of the officers and signed by Mr. Fox, where the officer took a look at Mr. Fox and determined if there was anything present that required emergency medical treatment. There wasn't. And Mr. Fox, when he signed the form, he just noted pain in his left arm. There was nothing that the officers were presented with or Dr. Frazier was presented with that would indicate the need for emergency medical treatment. Now, did she miss the fracture? Absolutely. And the X-rays verify that later it was determined to be a fracture. But what was the delay in time? The delay in time was three days. And there's no testimony, there's no evidence, no expert testimony, no medical records which indicate that period of time with the type of fracture that Mr. Fox had. She describes it as a subacute fracture. He told her he was hit with a pipe. Do you know what subacute? Does the record show us what subacute fracture means? No. It's not a compound fracture. I understand that. No, it's not. It wasn't sticking through the skin. When I hear acute, that says to me it's serious. When I hear subacute, that would suggest to me a common sense reading that it was less than acute. It wasn't as pressing as something that might require medical attention. Unless the Court has any additional questions, we would submit it on that argument. No further questions. Thank you, counsel. The case just argued will be submitted for decision.
judges: Campbell, O'scannlain, Trott